# STATE OF CONNECTICUT *v.* ROBERT J. WILLIAMS
## (SC 20766)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander and Dannehy, Js.

*Syllabus*

Convicted of manslaughter in the first degree with a firearm, criminal possession of a firearm, criminal possession of ammunition, and carrying a pistol without a permit, the defendant appealed to this court. The defendant's conviction arose from an incident in which he shot and killed a third-party bystander while shooting at another individual who had shot at the defendant first. With respect to the first degree manslaughter charge, the state alleged that the defendant, under circumstances evincing an extreme indifference to human life, had recklessly engaged in conduct that created a grave risk of death to the victim and had caused the victim's death while he was using a firearm. The defendant claimed, inter alia, that the trial court, which had instructed the jury on the defense of self-defense with respect to the charge of murder, of which the defendant was found not guilty, had improperly declined the defendant's request to instruct the jury on that defense with respect to the charge of manslaughter in the first degree with a firearm. The defendant also claimed that his conviction of both criminal possession of a firearm and criminal possession of ammunition violated the constitutional prohibition against double jeopardy. *Held*:

The trial court's failure to provide the jury with a self-defense instruction for the charge of manslaughter in the first degree with a firearm violated the defendant's constitutional rights to due process and to present a defense, and, accordingly, this court reversed the judgment of conviction as to that charge and ordered a new trial on that charge only.

Upon reviewing the rationale for justification defenses and the relevant case law from Connecticut and other states, this court concluded that, when the evidence so warrants, a trial court must instruct the jury on self-defense in connection with a reckless manslaughter charge, regardless of whether the victim is a bystander or the alleged aggressor.

State *v.* Williams

In the present case, the evidence reasonably supported a self-defense instruction on the charge of manslaughter in the first degree with a firearm, and the court therefore was required to provide such an instruction to the jury.

The state agreed that the trial court had properly instructed the jury on self-defense in connection with the murder charge, and, in light of the evidence that it was another individual who initiated the exchange of gunfire with the defendant, it was for the jury to determine whether the defendant actually and reasonably believed that the nature of the threat and degree of force were necessary to protect himself.

The trial court's failure to provide a self-defense instruction for the manslaughter charge was not harmless beyond a reasonable doubt, as the sole issue in the case was whether the defendant's actions were justified.

Moreover, although the trial court had instructed the jury on self-defense in connection with the murder charge, the jury found the defendant not guilty of murder and did not consider whether he acted in self-defense in connection with that charge, the trial court did not properly inform the jury how it should consider self-defense as to the manslaughter charge, and this court could not assume that the jury, in determining whether the defendant was guilty of manslaughter, would necessarily have referred to the definition of self-defense that the court provided in connection with the murder charge.

The defendant's conviction of both criminal possession of a firearm and criminal possession of ammunition under the same statutory provision ((Rev. to 2017) § 53a-217 (a)) violated the constitutional prohibition against double jeopardy, and, accordingly, this court vacated the defendant's conviction of criminal possession of ammunition.

Although the text of § 53a-217 (a) was ambiguous with respect to the issue, the statute's legislative history suggested that the legislature did not intend to treat the criminal possession of a firearm and criminal possession of ammunition as two separate crimes when both the firearm and the ammunition in the firearm are used during a single incident.

Furthermore, because the legislature expressed no clear intention to fix separate penalties for criminal possession of a firearm and criminal possession of ammunition, this court applied the rule of lenity to avoid turning a single transaction into multiple offenses and, thus, concluded that the defendant could be convicted of only one crime under § 53a-217 when he possessed the firearm and ammunition in one place and at one time.

(*One justice concurring in part and dissenting in part*)

Argued October 28, 2024—officially released June 10, 2025

*Procedural History*

Two part substitute information charging the defendant, in the first part, with the crimes of murder and

State *v.* Williams

manslaughter in the first degree with a firearm, and, in the second part, with the crimes of criminal possession of a firearm, criminal possession of ammunition, and carrying a pistol without a permit, brought to the Superior Court in the judicial district of Waterbury, where the first part of the information was tried to the jury before *Schuman, J.*; verdict of guilty of manslaughter in the first degree with a firearm; thereafter, the second part of the information was tried to the court, *Schuman, J.*; finding of guilty; judgment of guilty in accordance with the verdict and the court's finding, from which the defendant appealed to this court. *Reversed in part*; *vacated in part*; *new trial*.

*Pamela S. Nagy*, supervisory assistant public defender, for the appellant (defendant).

*Meryl R. Gersz*, assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Marc G. Ramia* and *Terence D. Mariani, Jr.*, senior assistant state's attorneys, for the appellee (state).

*Opinion*

McDONALD, J. The defendant, Robert J. Williams, appeals from the judgment of conviction of manslaughter in the first degree with a firearm, criminal possession of a firearm, criminal possession of ammunition, and carrying a pistol without a permit in connection with a shooting incident. The principal issue on appeal is whether the trial court erred in declining to give the jury an instruction on the defense of self-defense with respect to the charge of manslaughter in the first degree with a firearm when a third party was the victim of the shooting. The defendant also claims that his conviction of both criminal possession of a firearm and criminal possession of ammunition violates double jeopardy. We agree with the defendant that the trial court erred in declining to provide the jury with a self-defense instruction for the charge of manslaughter in the first degree with a firearm and that this error was

State *v.* Williams

harmful. Therefore, we reverse the defendant's conviction of manslaughter in the first degree with a firearm and remand the case to the trial court for a new trial on that count. We also agree with the defendant that his conviction of criminal possession of a firearm and criminal possession of ammunition violates double jeopardy. Accordingly, we vacate the defendant's conviction of criminal possession of ammunition.

Early one morning in August, 2017, following a trip to the Whitewood Café in Waterbury, the victim, Terry Smith, parked an Acura on the south side of East Farm Street, near the Tree Top Café in Waterbury. Smith and his passenger, Kenny Martin, exited the vehicle, walked down the sidewalk, and entered the Tree Top Café. Shortly after Smith and Martin arrived, the defendant, who had also previously been at the Whitewood Café, arrived and parked his vehicle on the north side of East Farm Street, almost directly across from the Acura. Smith exited the Tree Top Café and entered the Acura on the driver's side. Moments later, Martin exited the Tree Top Café and approached the Acura. As Martin reached the vehicle, he and the defendant, who was across the street and near his own vehicle, looked at each other. As the defendant began walking across the street, Martin fired shots at him from behind the passenger side of the Acura, in which Smith was still sitting. The defendant was struck by a bullet in his thigh. As he fell to the ground, he returned fire. One of the defendant's shots struck Smith in the head. Martin escaped unharmed. Both vehicles subsequently drove away.

A witness, Reinaldo Quinones, saw a portion of the incident from the balcony of his house, which was located on the same side of the street as the Tree Top Café, a few houses down. Quinones heard an argument when he went out onto his balcony. Quinones saw the defendant exit his vehicle and then drop something. Although he could not be sure, Quinones thought it was a gun. The

State *v.* Williams

defendant picked up the object and put it in his waistband. Quinones testified that the defendant and another man, who was across the street, began arguing, and then Quinones heard shots being fired. Because of the gunfire, he ducked down and lost sight of the men for a period of time. Quinones saw the defendant fall on the street, near the driver's side of his car, and crawl to his car.

Brian Grudzien, a police officer with the Waterbury Police Department, was dispatched to Saint Mary's Hospital in response to a call reporting that a gunshot victim was dropped off at the hospital. While en route to the hospital, he was informed that a possible suspect had been dropped off as well. When Grudzien arrived at the hospital, he parked at the exit of the hospital and saw a man, later identified as Martin, standing over the defendant, who was on the ground, and "really reaching back and throwing punches" at the defendant. Martin was yelling, "you killed my brother, you shot my brother in the head . . . ."[1] Grudzien arrested Martin. Smith, who had been struck by a bullet on the left side of his head, was pronounced dead at the hospital. The defendant sustained a broken femur as a result of his gunshot wound. The police ultimately recovered two different calibers of bullets and cartridge cases—at least six .45 caliber that were all fired from a semiautomatic gun, and five nine millimeter that were fired from the same nine millimeter pistol. Nine millimeter bullet fragments were recovered from Smith's autopsy. The bullet recovered from the defendant's leg was a .45 caliber bullet.

The state subsequently charged the defendant with murder in violation of General Statutes § 53a-54a, manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a (a), criminal possession of a firearm in violation of General Statutes (Rev. to 2017) § 53a-217

_____
[1] Grudzien later determined that Martin and Smith were not related.

State *v.* Williams

(a),[2] criminal possession of ammunition in violation of
§ 53a-217 (a), and carrying a pistol without a permit in
violation of General Statutes (Rev. to 2017) § 29-35 (a). At
trial, the state's theory of the case was that the defendant
intended to kill Martin, not Smith. The trial court instructed
the jury on transferred intent and, as to the murder
charge, on the defense of self-defense. The court did
not provide the jury with a self-defense instruction on
the manslaughter charge. The jury found the defendant
not guilty of murder. The court asked the foreperson,
"as to the jury interrogatories, question number one,
did the state prove both elements of the charge of mur-
der . . . beyond a reasonable doubt; yes or no?" The
foreperson answered, "[n]o." The jury found the defen-
dant guilty of manslaughter in the first degree with a
firearm. The defendant elected to have the remaining
charges tried to the court, which found the defendant
guilty on those charges. The court also found that the
defendant was a persistent serious felony offender in
violation of General Statutes § 53a-40 (c). The court
subsequently sentenced the defendant to thirty-five
years of incarceration for manslaughter in the first
degree with a firearm, two concurrent ten year senten-
ces for criminal possession of a firearm and criminal
possession of ammunition, which were to be served
consecutively to the manslaughter sentence, and a con-
current five year sentence for carrying a pistol without
a permit. The total effective term was forty-five years
of incarceration. This appeal followed. Additional facts
and procedural history will be set forth as necessary.

On appeal, the defendant challenges his convictions
of manslaughter in the first degree with a firearm and
criminal possession of ammunition. Specifically, he
contends, among other things, that (1) the trial court
improperly had declined to give the jury a self-defense

_____
[2] Hereinafter, unless otherwise indicated, all references to § 53a-217 in
this opinion are to the 2017 revision of the statute.

State *v.* Williams

instruction with respect to the charge of manslaughter in the first degree with a firearm, and (2) the defendant's conviction of both criminal possession of a firearm and criminal possession of ammunition violates double jeopardy. We address each claim in turn.

I

We begin with the defendant's contention that he was entitled to a self-defense instruction for the charge of manslaughter in the first degree with a firearm. The defendant contends that the trial court's failure to give this instruction violated his constitutional rights to due process and to present a defense. We agree with the defendant.[3]

The following additional procedural history is relevant to our analysis. The defendant filed a request to charge, seeking, among other things, an instruction that self-defense constituted a complete defense to both murder and manslaughter in the first degree with a firearm that the state must disprove beyond a reasonable doubt. In support of that request, defense counsel argued before the trial court that, "if [a] person is acting in response to a threat and is defending themselves appropriately, then there should be no criminal liability." The prosecutor disagreed that the trial court should provide a full self-defense instruction as to the manslaughter in the first degree with a firearm charge and noted that the court's proposed instruction on the manslaughter charge informed the jury that it could take self-defense into consideration in determining whether the defendant was reckless. The court agreed with

---

[3] The defendant also contends that the trial court improperly declined to provide the jury with an instruction on the common-law defense of necessity. Our conclusion that the trial court improperly declined to instruct the jury on the defense of self-defense as to the charge of manslaughter in the first degree with a firearm renders it unnecessary for us to review the defendant's claim that the trial court also improperly had declined to instruct the jury on the defense of necessity.

State *v.* Williams

defense counsel that a self-defense instruction should be provided on the murder count. But the court declined to provide it on the count of manslaughter in the first degree with a firearm. It explained: "I would agree that self-defense might apply if the defendant were defending himself not only against the person shooting at him, but [also] against the third party. But there is no evidence in this case [that] the third party, [Smith], threatened the defendant in any way. And, again, to allow complete exception . . . to self-defense in a reckless killing of a third party, I think is not tolerable in an organized society, and we can't write it off as just collateral damage. I do agree, however, that the defendant can argue that self-defense was one of the circumstances that the defendant confronted in determining whether the defendant acted with extreme indifference to human life under all of the circumstances. But I just am not going so far as to say that the state has to disprove self-defense for the manslaughter charge."

When giving its final instructions to the jury, the trial court first instructed the jury that, to find the defendant guilty of murder, it must find that the defendant, with the intent to cause the death of Martin, caused the death of Smith. The court then explained the theory of transferred intent. The court also gave a self-defense instruction for the murder count. It noted that "[t]here is a statute that defines self-defense, and you are to apply that definition in reviewing the evidence in this case and not apply any common or colloquial meaning that you may have heard before." It explained that "self-defense is a complete defense to certain crimes, including murder."[4] The court further noted that, if the state

_____

[4] The trial court read the jury the statutory definition of self-defense: "A person is justified in using reasonable physical force upon another person to defend himself from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose. The statute requires that, before a defendant uses physical force upon another person to defend himself, he must have two reasonable beliefs. The first is a reasonable belief

State *v.* Williams

failed to disprove at least one of the elements of self-defense or to prove one of the statutory disqualifications, then the defendant was not guilty of murder, and the jury would go on to consider the count of manslaughter in the first degree with a firearm.

As part of the instruction on the reckless manslaughter count, the trial court explained that the first element of the crime was "that the defendant, under circumstances evincing an extreme indifference to human life, recklessly engaged in conduct [that] created a grave risk of death to another person . . . ." It then clarified that, in order to determine whether the state met its burden of demonstrating that the defendant acted with extreme indifference and recklessness, the jurors must "consider all of the circumstances confronting the defendant, *including whether he had a valid claim to self-defense and whether he exercised self-defense reasonably or whether he exercised it recklessly. Although the state does not need to disprove self-defense beyond a reasonable doubt* to convict on this count, it must still prove that the defendant, under circumstances evincing an extreme indifference to human life, recklessly engaged in conduct [that] created a grave risk of death to another person." (Emphasis added.)

The following legal principles guide our determination of whether the trial court was required to provide a self-defense instruction as to the count of manslaughter in the first degree with a firearm. "In determining whether the trial court improperly refused a request to

_____

that physical force is then being used or about to be used upon him. The second is a reasonable belief that the degree of force he is using to defend himself from what he believes to be an ongoing or imminent use of force is necessary for that purpose." See General Statutes § 53a-19 (a).

Although § 53a-19 was the subject of amendments in 2019 and 2022; see Public Acts 2022, No. 22-117, § 9; Public Acts 2019, No. 19-108, § 3; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

State *v.* Williams

charge, [w]e . . . review the evidence presented at trial in the light most favorable to supporting the . . . proposed charge. . . . A request to charge [that] is relevant to the issues of [a] case and [that] is an accurate statement of the law must be given. . . . If, however, the evidence would not reasonably support a finding of the particular issue, the trial court has a duty not to submit it to the jury. . . . Thus, a trial court should instruct the jury in accordance with a party's request to charge [only] if the proposed instructions are reasonably supported by the evidence." (Internal quotation marks omitted.) *State* v. *Arroyo*, 284 Conn. 597, 607–608, 935 A.2d 975 (2007).

We are also mindful that "[a] fundamental element of due process of law is the right of a defendant charged with a crime to establish a defense. . . . [When], as here, the challenged jury instructions involve a constitutional right, the applicable standard of review is whether there is a reasonable possibility that the jury was misled in reaching its verdict. . . . In evaluating the particular charges at issue, we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law." (Internal quotation marks omitted.) *State* v. *Nathan J.*, 294 Conn. 243, 261, 982 A.2d 1067 (2009).

Whether the defense of self-defense applies to a charge of reckless manslaughter in the first degree with a firearm when the victim is a bystander is a question of law over which we exercise plenary review. See, e.g., *State* v. *Amado*, 254 Conn. 184, 197, 756 A.2d 274 (2000); see also, e.g., *State* v. *Collins*, 299 Conn. 567, 599, 10 A.3d 1005 ("[a] challenge to the validity of jury instructions

State *v.* Williams

presents a question of law over which [we have] plenary review'' (internal quotation marks omitted)), cert. denied, 565 U.S. 908, 132 S. Ct. 314, 181 L. Ed. 2d 193 (2011).

As the parties acknowledge, this case involves the novel question of whether a self-defense instruction, when the evidence warrants, is available to a defendant charged with reckless manslaughter in the first degree with a firearm of an individual who is not the aggressor.[5] To answer that question, we first review the rationale for justification defenses, such as self-defense. We then consider whether a defendant's exercise of the right of self-defense, when the defendant used deadly force in the proper exercise of that right, applies to a charge of reckless manslaughter in the first degree with a firearm of an unintended victim, following our decision in *State* v. *Hall*, 213 Conn. 579, 584–86, 569 A.2d 534 (1990).[6] ''A

---

[5] The defendant and other jurisdictions have referred to the defense as ''transferred intent self-defense'' or ''transferred innocent intent'' because the victim is not the alleged aggressor. See, e.g., *Commonwealth* v. *Pina*, 481 Mass. 413, 420–21, 116 N.E.3d 575 (2019) (court recognized that ''transferred innocent intent'' theory has been applied in other jurisdictions when bystander was killed during defendant's lawful exercise of right of self-defense but concluded that it has not ''recognized transferred intent self-defense as a matter of [its] homicide jurisprudence, and need not do so in this case'' (internal quotation marks omitted)). We believe this to be a misnomer, as there is no intent to transfer. Instead, we believe that referring to the justification as self-defense is most appropriate given our jurisprudence. In *State* v. *Jones*, 39 Conn. App. 563, 665 A.2d 910, cert. denied, 235 Conn. 931, 667 A.2d 800 (1995), the defendant was convicted of the intent crime of assault in the first degree, and the jury was given a self-defense instruction despite the fact that the victim was not the alleged aggressor. See id., 564–65, 568. In the Appellate Court's decision, it does not refer to self-defense as ''transferred intent self-defense'' or ''transferred innocent intent.'' Rather, the court referred to that defense as just ''self-defense.'' For consistency with our jurisprudence, and to prevent confusion about the applicability of self-defense to nonintent crimes, we refer to the justification as ''self-defense,'' regardless of whether the victim was the alleged aggressor.

[6] We note that the parties do not frame this issue as one of statutory interpretation. We are mindful, however, of the incongruity that would result in recognizing transferred intent to kill when it comes to intentional murder; see, e.g., *State* v. *Higgins*, 265 Conn. 35, 51, 826 A.2d 1126 (2003); while not

State *v.* Williams

justification defense represents a legal acknowledgment that the harm caused by otherwise criminal conduct is, under special justifying circumstances, 'outweighed by the need to avoid an even greater harm or to further a greater societal interest.' 1 P. Robinson, Criminal Law Defenses (1984) § 24 (a), p. 83. For example, in the case of self-defense, '[s]ociety's interest in the right to bodily integrity, when combined with the physical harm threatened [by an aggressor], outweighs the normal prohibition against the physical injury needed to deter such an aggressor.' Id., p. 84. All justification defenses share a similar internal structure: special 'triggering circumstances permit a necessary and proportional response . . . .' Id., § 24 (b), p. 86.'' (Footnote omitted.) *State* v. *Montanez*, 277 Conn. 735, 752, 894 A.2d 928 (2006). In Connecticut, it is well settled that "self-defense is a justification for engaging in otherwise criminal conduct. See General Statutes § 53a-19; see also P. Robinson, 'Criminal Law Defenses: A Systematic Analysis,' 82 Colum. L. Rev. 199, 236 (1982) ('[i]n most modern codifications, self-defense is appropriately treated . . . as a pure justification').'' *State* v. *Montanez*, supra, 752.

We have explained that "[j]ustified conduct is subject to neither condemnation nor punishment because it does not, under the circumstances, violate the prohibition of the law, and indeed may be desired and encouraged. . . . Thus, conduct that is found to be justified is, under the circumstances, not criminal.'' (Citation omitted; internal quotation marks omitted.) Id., 752–53;

recognizing that the trial court was required to provide the defendant with the benefit of a complete self-defense instruction for reckless manslaughter. Such a conclusion would advance no public benefit. See, e.g., *Commonwealth* v. *Fowlin*, 551 Pa. 414, 421, 710 A.2d 1130 (1998) ("[the Pennsylvania high] court could fashion a rule of law [that] holds the defender criminally liable, but in doing so, [it] would have furthered no policy of the criminal law''). In the present case, it was Martin who initially began firing at the defendant, and it was Martin who placed Smith in the line of fire by standing behind the passenger side of the car in which Smith was sitting.

State *v.* Williams

see, e.g., *State* v. *Yanz*, 74 Conn. 177, 186, 50 A. 37 (1901) (*Hamersley, J.*, dissenting) ("killing in self-defense is not a crime"); *State* v. *Scheele*, 57 Conn. 307, 314, 18 A. 256 (1889) ( "reasonable exercise of the right [of self-defense is] justifiable and not a crime at all"); *Morris* v. *Platt*, 32 Conn. 75, 83 (1864) ("no man is liable in a . . . criminal prosecution for an injury lawfully committed in self-defense [on] an actual assailant"); see also, e.g., *Thomas* v. *Leeke*, 725 F.2d 246, 249–50 n.2 (4th Cir.) ("Rooted in the Anglo-American tradition is the belief that a killing in self-defense is not a crime. . . . [I]t is elementary and fundamental to our jurisprudence that killing or wounding in self-defense is simply no crime at all . . . ." (Citations omitted.)), cert. denied, 469 U.S. 870, 105 S. Ct. 218, 83 L. Ed. 2d 148 (1984); Commission to Revise the Criminal Statutes, Penal Code Comments, Conn. Gen. Stat. Ann. § 53a-16 (West 2023), commission comment, p. 559 (self-defense statute "state[s] [a rule] of law under which the use of force is justified and thus not criminal").

The question, then, is whether self-defense is a justification defense to a charge of reckless manslaughter of a third-party victim who was not the aggressor against whom a defendant was justified in using self-defense. Although we have not previously had occasion to consider this precise question, an early decision from this court is helpful to our analysis. In *Morris* v. *Platt*, supra, 32 Conn. 75, this court considered whether a defendant who, in lawful self-defense, fires a pistol at an assailant but misses and wounds an innocent bystander may be civilly liable for the resultant injury, even if the defendant was not negligent. See id., 81, 84. The court reasoned that "[a] man who is assailed, and under such circumstances as to authorize a reasonable belief that the assault is with design to take his life, or do him extreme bodily injury [that] may result in death, will be justified in the eye of the criminal law if he kill[s]

State *v.* Williams

his assailant, and in an action of trespass, if he unsuccessfully attempt[s] to kill him, and he surviving brings his action, for the killing would have been lawful and of course the attempt lawful; and no man is liable in a civil suit or criminal prosecution for an injury lawfully committed in self-defense [on] an actual assailant.'' Id., 83. As to injured bystanders, the court explained that ''[i]t is well settled in this court that a man is not liable, in an action of trespass on the case, for any unintentional consequential injury resulting from a lawful act, [when] neither negligence nor folly can be imputed to him, and that the burden of proving the negligence or folly, [when] the act is lawful, is [on] the plaintiff.'' Id., 84. As a result, this court concluded that, for purposes of determining liability, there is no reason to draw any distinction between a directly injured plaintiff and one who was injured indirectly. See id., 87–88. It is ''the nature of the accident, whether avoidable or unavoidable under the circumstances, or inevitable,'' that is relevant to the liability inquiry—not whether ''the injury was direct or consequential.'' Id., 87. In at least one criminal case in Connecticut since *Morris* was decided, a trial court provided a self-defense jury instruction when an innocent bystander was killed. See *State* v. *Jones*, 39 Conn. App. 563, 564–65, 568, 665 A.2d 910 (self-defense jury instruction was provided in case in which defendant was hiding behind tree and took out his gun to shoot at rival gang member who was looking for him but inadvertently shot five year old girl in face as she passed by in car driven by her grandmother), cert. denied, 235 Conn. 931, 667 A.2d 800 (1995).

State courts in nearly one half of the country have held that the killing of, or injury to, a bystander is justified if done in self-defense. See, e.g., F. Tinio, Annot., ''Unintentional Killing of or Injury to Third Person During Attempted Self-Defense,'' 55 A.L.R.3d 620, 623–24, § 3 [a] (1974) (citing cases from twenty-one

State *v.* Williams

states that recognize principle); see also, e.g., F. Tinio, supra, 55 A.L.R.3d, § 3 [a], p. 132 (Supp. 2021) (citing cases from three more states that recognize principle). Many of those courts have applied this rule, even when the crime charged requires a reckless mental state. See, e.g., F. Tinio, supra, 55 A.L.R.3d, § 4 [b], pp. 631–34 (1974). As the American Law Reports explain, "[i]f . . . the perpetrator of the homicide or of the assault had no criminal intent in attempting to injure or kill another person, as [when] the perpetrator was lawfully defending himself from the harm sought to be inflicted [on] him by such other person, the fact that, on that occasion, a third person was unintentionally injured or killed by the perpetrator would not make him liable, unless the perpetrator acted carelessly or without regard to the safety of innocent bystanders. This view has been applied in a variety of circumstances in which the perpetrator of the homicide or assault has been prosecuted for murder, manslaughter, or assault, based [on] injury to, or death of, a third person." (Footnotes omitted.) Id., § 2, pp. 622–23. Similarly, Professor Wayne R. LaFave has explained the principle as follows: "[S]uppose A shoots at B [in self-defense] but, missing B, hits and kills or injures C, an innocent bystander. If A aims at his attacker B in proper self-defense, but hits C instead, he is not generally guilty of murder or battery of C. Once again, he is only as guilty as to C as he would have been had his aim been accurate enough to have hit B." 1 W. LaFave, Substantive Criminal Law (3d Ed. 2018) § 6.4 (d), pp. 648–49.

Indeed, appellate courts in other jurisdictions have applied the theory of self-defense when the victim was in close proximity to the initial aggressor but not the defendant, and the defendant fired his gun, even though there were people, other than the aggressor, nearby. See, e.g., *Nelson* v. *State*, 853 So. 2d 563, 564–65 (Fla. App. 2003) (trial court erred in failing to give requested

State *v.* Williams

self-defense instruction when defendant had fired gun into nearby crowd of twenty to thirty people); *People* v. *Adams*, 9 Ill. App. 3d 61, 62–64, 291 N.E.2d 54 (1972) (conviction was reversed when defendant had fired gun at assailant who was in driver's seat and bullets passed through his body and killed passenger); *Commonwealth* v. *Fowlin*, 551 Pa. 414, 415, 710 A.2d 1130 (1998) (defendant fired gun in nightclub when approximately 200 people were present).

In cases involving prosecutions for manslaughter, state appellate courts have held that a defendant's unintentional injury to, or killing of, a third person while defending himself either was or could be found justifiable when it was or could be shown from the circumstances that the defendant properly exercised the right of self-defense. See, e.g., *Brown* v. *State*, 84 Fla. 660, 661, 94 So. 874 (1922); *Butler* v. *State*, 92 Ga. 601, 603–604, 19 S.E. 51 (1893); *Olds* v. *State*, 84 Ga. App. 397, 402–403, 66 S.E.2d 396 (1951); *People* v. *Adams*, supra, 9 Ill. App. 3d 63–64; *Gray* v. *Commonwealth*, 247 Ky. 282, 285, 57 S.W.2d 6 (1933); *State* v. *Sherwood*, 39 N.M. 518, 519–20, 50 P.2d 968 (1935); *State* v. *Clifton*, 32 Ohio App. 2d 284, 284, 286–87, 290 N.E.2d 921 (1972); *Jackson* v. *State*, 66 Tex. Crim. 469, 469–70, 147 S.W. 589 (1912).

The state contends that a self-defense instruction is inconsistent with reckless manslaughter. At oral argument before this court, the assistant state's attorney argued that, if the state proves the elements of manslaughter in the first degree with a firearm, it will necessarily have negated the defense of self-defense because reckless conduct, by definition, cannot be considered reasonable for purposes of the justification of self-defense. Connecticut appellate courts, however, have determined that "[s]elf-defense is a valid defense to crimes based on reckless conduct as well as intentional conduct." *State* v. *Jones*, supra, 39 Conn. App. 567 n.4; see also, e.g., *State* v. *Hall*, supra, 213 Conn. 586 (defen-

State *v.* Williams

dant was entitled to self-defense jury instruction for lesser included offense of manslaughter in second degree); *State* v. *King*, 24 Conn. App. 586, 591, 590 A.2d 490 ("[because] the defense of self-defense is available for murder, which is the extreme indifference to human life, it would be anomalous to conclude that the defense was not applicable to the lesser included offense of reckless manslaughter in the first degree"), cert. denied, 219 Conn. 912, 593 A.2d 136 (1991).

In *State* v. *Hall*, supra, 213 Conn. 579, we were asked to consider whether the crime of manslaughter in the second degree and the defense of self-defense are mutually incompatible. See id., 584. We began our analysis by noting "the difficulty a jury has in weighing the justifiability of risk and action inherent in the crime of manslaughter in the second degree and the concept of self-defense . . . ." (Internal quotation marks omitted.) Id. We further observed that, "[i]n matters involving such esoteric concepts, the jury should have the benefit of as much information and instruction as will aid [it] in arriving at a just verdict." (Internal quotation marks omitted.) Id., 585. We concluded that, when the evidence warrants the instruction, "the trial court must instruct the jury on self-defense in cases involving the charge of manslaughter in the second degree." Id.

In support of our conclusion in *Hall*, we also focused on the distinctions in the statutory definitions between the defense of self-defense and the crime of manslaughter in the second degree. We explained that "§ 53a-19, in subsection (a), provides [in relevant part] that, subject to the exceptions in subsections (b) and (c), 'a person is justified in using reasonable physical force upon another person to defend himself . . . from what *he* reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which *he* reasonably believes to be necessary for such purpose . . . .' " (Emphasis in original.) Id. We noted

State *v.* Williams

that, in contrast, "General Statutes § 53a-56 (a) provides in [relevant] part: 'A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person . . . .' " Id. We further observed that "[a] person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. *The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.*" (Emphasis in original; internal quotation marks omitted.) Id., 585–86. We emphasized in *Hall* that § 53a-19 "focuses on the person . . . claiming self-defense. It focuses on what *he* reasonably believes under the circumstances and presents a question of fact. . . . Self-defense thus requires the trier of fact to measure the justifiability of the defendant's actions from a subjective perspective." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 586; see also, e.g., *State* v. *DeJesus*, 194 Conn. 376, 388–89, 481 A.2d 1277 (1984); *State* v. *Corchado*, 188 Conn. 653, 663, 453 A.2d 427 (1982). We contrasted the subjective analysis required by § 53a-19 with manslaughter in the second degree, which "requires the trier of fact to view the justifiability of the defendant's risk and action from the objective perspective of a reasonable person. It is this distinction that allows self-defense to be an applicable defense to . . . § 53a-56 (a) (1)." *State* v. *Hall*, supra, 213 Conn. 586.

The rationale from *Hall* applies with equal force to the present case. Here, as this court emphasized in *Hall*, self-defense under § 53a-19 focuses on the person claiming self-defense. Id. The relevant inquiry is what that person "reasonably believes under the circumstances . . . ." (Internal quotation marks omitted.) Id.

State *v.* Williams

In other words, "[s]elf-defense . . . requires the trier of fact to measure the justifiability of the defendant's actions from a *subjective* perspective."[7] (Emphasis added.) Id. Reckless manslaughter in the first degree under General Statutes § 53a-55 (a) (3),[8] on the other

---

[7] We note that, at oral argument, the assistant state's attorney implied that a different rule should apply when a third party is killed while the defendant is acting in self-defense. We are not persuaded. General Statutes (Rev. to 2017) § 53a-16 provides that, "[i]n *any* prosecution for an offense, justification, as defined in [among other statutes, § 53a-19], shall be a defense." (Emphasis added.) Our legislature did not carve out an exception to the applicability of the justification of self-defense when a bystander is accidentally killed rather than the initial aggressor. We decline to adopt an exception when the legislature has not done so.

We also note that § 53a-19 does not expressly preclude the application of self-defense in the third-person context, and the facts of the present case fit comfortably within the language of § 53a-19. Specifically, the defendant contends that Smith was killed because the defendant was "using reasonable physical force" against Martin when the defendant "reasonably believe[d]" that Martin was "using or about to use deadly physical force" against him. General Statutes § 53a-19 (a). Although the statute requires that the defense be available only if the defendant is using physical force against the assailant, it does not require that the resulting harm be inflicted on the assailant. Viewed against the backdrop of Connecticut common law; see, e.g., *State* v. *Leniart*, 333 Conn. 88, 109, 215 A.3d 1104 (2019) ("the savings clause to the Penal Code provides, and our cases recognize, that the common law is preserved under the code unless clearly preempted; the code does not bar our courts from recognizing . . . other defenses not inconsistent with statute" (internal quotation marks omitted)); the doctrine of self-defense is applicable even when an allegedly innocent third party is injured or killed. See, e.g., *Morris* v. *Platt*, supra, 32 Conn. 84 (rejecting argument that "a man lawfully exercising the right of self-defense . . . is liable to third persons for *any* and *all* unintentional, accidental injurious consequences [that] may happen to them" (emphasis in original)). Connecticut's common law also reinforces the notion that, when exercising the right of self-defense, a defendant must act with due care for innocent bystanders and that this issue is one for the jury to decide.

[8] The defendant was charged with, and convicted of, manslaughter in the first degree with a firearm in violation of § 53a-55a (a). Section 53a-55a (a) provides that "[a] person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree *as provided in section 53a-55*" and, among other things, uses a firearm in the commission of the offense. (Emphasis added.) Accordingly, we look to the provisions of § 53a-55 (a) for guidance as to the other relevant elements of the crime.

State *v.* Williams

hand, focuses on "the justifiability of the defendant's risk and action from the *objective* perspective of a reasonable person." (Emphasis added.) Id. Thus, under the theory of self-defense, conduct that may be a "gross deviation from the standard of conduct that a reasonable person would observe in the situation" may nevertheless be "justified if the defendant's beliefs are reasonable from" the defendant's perspective. (Internal quotation marks omitted.) Id. Having concluded in *Hall* that a trial court must instruct the jury on self-defense for a reckless manslaughter charge when the evidence warrants such an instruction, we further conclude that the defense is available regardless of whether the victim is a bystander or the alleged aggressor.

We recognize that this subjective-objective rationale from *Hall* appears to be in tension with our recent decision in *State* v. *Johnson*, 351 Conn. 53, 328 A.3d 143 (2025), in which we explained that "four conditions must exist for an act of violence to be justified on the grounds of self-defense . . . (1) the defendant must actually have believed that the victim was using or was about to use physical force against him . . . (2) a reasonable person, viewing all the circumstances from the defendant's point of view, would have shared that belief, (3) the defendant must actually have believed that the degree of force he used was necessary for defending himself . . . and (4) a reasonable person, viewing all the circumstances from the defendant's point of view, also would have shared that belief." (Internal quotation marks omitted.) Id., 61. Nevertheless, there were two grounds for our conclusion in *Hall*: the subjective-objective distinction; see *State* v. *Hall*, supra, 213 Conn. 585–86; and the fact that, in "esoteric" matters, the jury should have as much information as possible. (Internal quotation marks omitted.) Id., 585. Even if we give less weight to the first ground in *Hall*, we are still persuaded that there is an inherent difficulty for a jury, comprised

State *v.* Williams

of lay people, "in weighing the justifiability of risk and action inherent in the crime of [reckless] manslaughter . . . and the concept of self-defense . . . ." (Internal quotation marks omitted.) Id., 584. Accordingly, it is reasonable to provide the jury a thorough explanation of self-defense in this context to enable it to arrive at a just verdict.

Although the state urges this court to conclude that the defense of self-defense is inapplicable to a charge of reckless manslaughter when a third party is the victim, it recognizes that, when a perpetrator acts in lawful self-defense and unintentionally kills a third person, the perpetrator is generally not liable. The state emphasizes, however, that a perpetrator may still be liable if the perpetrator "acted carelessly or without regard to the safety of innocent bystanders." (Emphasis omitted; internal quotation marks omitted.) This, of course, is true. The state, however, relies on this proposition to conclude that a self-defense instruction is never warranted for a charge of reckless manslaughter of an unintended or third-party victim. But whether the perpetrator, evincing an extreme indifference to human life, acted recklessly or without regard to the safety of innocent bystanders or acted in self-defense as defined by statute is a factual question that must be left for the trier of fact to decide. See, e.g., *State* v. *Hall*, supra, 213 Conn. 586 ("[Section 53a-19] focuses on the person . . . claiming self-defense. It focuses on what *he* reasonably believes under the circumstances and *presents a question of fact*." (Emphasis altered; internal quotation marks omitted.)). If the trier of fact concludes that a defendant's exercise of the right of self-defense was not reasonable, the killing of the bystander may amount to manslaughter. See, e.g., 1 W. LaFave, supra, § 6.4 (d), p. 649 n.68 ("[T]he situation may be such that A ought not to shoot at B in self-defense, etc., because of the presence of bystanders like C whom A might hit instead.

State *v.* Williams

If there is a high degree of risk to people like C involved in A's shooting at B, A's killing of C will amount to manslaughter . . . .'' (Citations omitted.)).

Finally, the state contends that public policy supports its position. It argues that "holding self-defenders liable for reckless offenses against third parties sufficiently balances [the] competing concerns of the right to self-defense and the right of bystanders to an appropriate degree of care." (Internal quotation marks omitted.) We find the reasoning of the Pennsylvania Supreme Court on this point more persuasive. The Pennsylvania high court explained that "the law of Pennsylvania does not require one to stand by helplessly while he is injured or killed by an assailant. And . . . when one is the victim of an attack, the assailant, not the victim, picks the time, the place, the manner, and the circumstances of the attack. Leisurely assessment of the circum-stances and the danger to others is almost never a feature of such an assault, and most often, the best the victim can do is to mount a defense [that] hopefully will preserve his life. In many cases, the victim has only seconds to act in order to avoid injury or death. . . . Any victim of crime who justifiably exercises his right of self-preservation may inadvertently injure a bystander. *Admittedly,* [*the Pennsylvania high*] *court could fash-ion a rule of law* [*that*] *holds the defender criminally liable, but in doing so,* [*it*] *would have furthered no policy of the criminal law. Instead,* [*the court*] *would have punished a person who was acting within his instinct for self-preservation and, in an appropriate case, within the boundaries of* [*the*] *law.*'' (Emphasis added.) *Commonwealth* v. *Fowlin,* supra, 551 Pa. 420– 21. When a person unintentionally injures or kills a third-party bystander while using justifiable force in self-defense, that person does not have any criminally culpable intent. Therefore, we agree with the Pennsylva-

State *v.* Williams

nia Supreme Court that punishment of that person would serve no policy of the criminal law.

We nonetheless emphasize that the right to self-defense is not absolute. It is restrained by the reasonableness of the defendant's actions. Additionally, it may not be used to absolve a person who acted without justification and claimed self-defense. Connecticut's self-defense statute provides that a person is not justified in using deadly physical force on another if (1) they can avoid the necessity of using such force by retreating in certain circumstances, (2) with the intent to cause physical injury or death to another person, they provoke the use of physical force by the other person, (3) they are the initial aggressor, or (4) the deadly physical force was the product of a combat by agreement not specifically authorized by law. See General Statutes § 53a-19 (b) and (c). These limitations on the justification of self-defense ameliorate the state's concern regarding unnecessary danger to third-party bystanders because, if the person acts outside of the parameters established by law, then their act is not justified, and they may be prosecuted for any injury to a bystander that they may inflict. See, e.g., *Commonwealth* v. *Fowlin*, supra, 551 Pa. 421. In sum, we conclude that, when the evidence reasonably supports a finding of self-defense, a trial court is required to provide an instruction on self-defense on a charge of manslaughter in the first degree. See, e.g., *State* v. *Arroyo*, supra, 284 Conn. 607–608.

Here, the evidence reasonably supported a self-defense instruction on the reckless manslaughter charge given that the trial court instructed the jury on self-defense on the murder charge, which the state does not contend was improper. Reviewing the evidence in the light most favorable to supporting the proposed instruction; see, e.g., id.; we emphasize that Martin initiated the violent altercation by firing shots at the defendant from behind the passenger side of the car in which

State *v.* Williams

Smith was seated in the driver's position. One of Martin's shots struck the defendant in the leg, causing him to fall to the ground. While falling, the defendant returned fire at Martin, ultimately striking and killing Smith instead, who was situated in a space between Martin and the defendant. It was for the jury to decide, on the basis of the evidence presented at trial, whether the defendant actually and reasonably believed that the nature of the threat and degree of force were necessary to protect himself. If there is evidence to support the proposed charge, the trial court must give the instruction, and it is for the jury to determine how to weigh the evidence. See, e.g., *State* v. *Person*, 236 Conn. 342, 347–48, 673 A.2d 463 (1996). Because the defendant's request to charge on self-defense as to the charge of manslaughter in the first degree with a firearm was "relevant to the issues of [the] case and . . . [was] an accurate statement of the law," the trial court was required to provide a full self-defense instruction. (Internal quotation marks omitted.) *State* v. *Arroyo*, supra, 284 Conn. 608. Having concluded that the trial court erred in declining to provide the jury with a self-defense instruction on the count of manslaughter in the first degree with a firearm, we must determine whether that error was harmless. See, e.g., *State* v. *Hall*, supra, 213 Conn. 587.

The trial court failed to provide a complete jury instruction on self-defense as to the manslaughter in the first degree with a firearm charge when the sole issue in the case was whether the defendant's actions were justified. Because the jury found the defendant not guilty of murder, indicating on an interrogatory that the state had not proven all of the elements of murder, the jury had no occasion to consider whether the defendant acted in self-defense in connection with that charge, and the trial court did not properly inform the jury how it should consider self-defense as to the manslaughter

State *v.* Williams

charge. Accordingly, we cannot conclude that the trial court's failure to provide a self-defense instruction for the manslaughter charge was harmless beyond a reasonable doubt. See, e.g., *State* v. *King*, supra, 24 Conn. App. 590–91 (The trial court's failure to provide a self-defense instruction could not "be construed as harmless because, although the defendant was acquitted of murder . . . [he] was convicted of the unintentional offense of reckless manslaughter in the first degree. [The] jury returned a guilty verdict against the defendant for a crime [for] which it was not allowed to consider the defense of self-defense. . . . [The Appellate Court could not] conclude that the conviction . . . was necessarily a rejection of the defense of self-defense by the jury because the jury [found] the defendant [not guilty] of the two crimes [for] which it was allowed to consider the defense of self-defense.").

The state, however, contends that there is not a reasonable possibility that the jury was misled in reaching its verdict because the trial court's overall instructions sufficiently conveyed the appropriate concepts to the jury. We disagree. Contrary to its prior instruction on self-defense as to the murder charge, regarding the charge of manslaughter in the first degree with a firearm, the court instructed the jury that it must "consider all of the circumstances confronting the defendant, *including whether he had a valid claim to self-defense* and whether he exercised self-defense reasonably or whether he exercised it recklessly. Although *the state does not need to disprove self-defense beyond a reasonable doubt to convict on this count*, it must still prove that the defendant, under circumstances evincing an extreme indifference to human life, recklessly engaged in conduct [that] created a grave risk of death to another person." (Emphasis added.) The court provided no definition of "self-defense" as to the manslaughter charge, and it did not incorporate by reference the prior instruc-

State *v.* Williams

tion on self-defense that was provided in connection with the murder charge. The challenged instruction also diluted the state's burden of proof by failing to provide the jury with any context-specific understanding of the meaning of self-defense, especially when the court had previously instructed the jury that it must "not apply any common or colloquial meaning" of self-defense.[9] As a result, the mention of self-defense in the manslaughter jury instruction left nothing meaningful for the jury to apply, particularly when the court specifically informed the jury that "*the state does not need to disprove self-defense beyond a reasonable doubt to convict on this count*"; (emphasis added); which is diametrically at odds with a proper self-defense instruction. See, e.g., *State* v. *Singleton*, 292 Conn. 734, 747, 974 A.2d 679 (2009) ("it [is] the state's burden to disprove the defense [of self-defense] beyond a reasonable doubt" (internal quotation marks omitted)).

The state contends that the jury would necessarily have referred to the definition of self-defense provided in the context of the murder charge. We will not make this assumption given the well settled principle that a jury is presumed to follow the trial court's instructions. See, e.g., *State* v. *Pappas*, 256 Conn. 854, 889, 776 A.2d 1091 (2001). Because the jury determined that the state failed to prove all of the elements of the murder charge,

_____

[9] Indeed, the jury had no understanding of the meaning of self-defense as it applied to the reckless manslaughter charge, and the information that the trial court did provide with respect to that charge directly conflicted with its earlier instruction on self-defense. We recognized in *Hall* "the difficulty a jury has in weighing the justifiability of risk and action inherent in the crime of [reckless] manslaughter . . . and the concept of self-defense . . . ." (Internal quotation marks omitted.) *State* v. *Hall*, supra, 213 Conn. 584. We have further observed that, "[i]n matters involving such esoteric concepts, the jury should have the benefit of as much information and instruction as will aid [it] in arriving at a just verdict." (Internal quotation marks omitted.) Id., 585. The jury should have been provided with a complete and thorough explanation of these concepts.

State *v.* Williams

it would have had no reason to parse the language of the self-defense instruction during its deliberations. Cf. *State* v. *Espinal*, 208 Conn. App. 369, 418–20, 264 A.3d 1003, cert. denied, 340 Conn. 916, 266 A.3d 886 (2021). The trial court instructed the jury as much by explaining, "if you unanimously find that the state has failed to prove beyond a reasonable doubt either of the elements of murder, you shall . . . find the defendant not guilty as to that offense *and not consider the defense of self-defense* as to that offense." (Emphasis added.) In sum, the trial court did not instruct the jury about who had the burden with respect to self-defense, and the jury lacked a complete and proper instruction on self-defense. The limited instruction the jury did receive was also not a correct statement of the law because the court informed the jury that, with respect to the manslaughter count, the state did not need to disprove self-defense beyond a reasonable doubt. This is directly at odds with the self-defense instruction the court had previously given the jury with respect to the murder charge. We conclude, therefore, that the trial court's failure to provide a jury instruction on self-defense as to the charge of manslaughter in the first degree with a firearm was not harmless beyond a reasonable doubt.

II

Finally, we address the defendant's contention that his conviction of both criminal possession of a firearm and criminal possession of ammunition violates double jeopardy because the legislature did not intend for a person who is convicted of illegally possessing a gun also to be convicted of illegally possessing the ammunition contained within the gun. We agree.

The following additional facts and procedural history are relevant to our analysis. In count three of the substitute information, the state charged the defendant with criminal possession of a firearm in violation of § 53a-

State *v.* Williams

217 (a), alleging "that, on or about August 12, 2017, at approximately 2 a.m., at or near the area of 23 East Farms Street, Waterbury . . . the [defendant] did possess a firearm and had been previously convicted of a felony." In count four, the state charged the defendant with criminal possession of ammunition under the same provision, alleging "that, on or about August 12, 2017, at approximately 2 a.m., at or near the area of 23 East Farms Street, Waterbury . . . the [defendant] did possess ammunition and had been previously convicted of a felony."

The defendant elected to be tried by the court on these counts, as well as on count five, which alleged that the defendant was carrying a pistol without a permit. The parties stipulated that the defendant possessed a nine millimeter handgun, that he possessed ammunition, and that he was previously convicted of a felony. The trial court found that the stipulation satisfied the elements of both criminal possession of a firearm and criminal possession of ammunition, noting that surveillance video footage also provided strong circumstantial evidence that the defendant possessed a firearm, "the bullets, [and] the casing[s] . . . ." Accordingly, the court found the defendant guilty of counts three and four and sentenced him to two concurrent sentences of ten years of incarceration, which were to be served consecutively to the thirty-five year sentence that he received for manslaughter in the first degree with a firearm.

The defendant seeks review of this unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).[10] We conclude

---

[10] "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the

State *v.* Williams

that the record is adequate for review and that a double jeopardy violation implicates a defendant's constitutional rights. See, e.g., *State* v. *Alvaro F.*, 291 Conn. 1, 5 n.8, 966 A.2d 712 (reviewing double jeopardy claim under *Golding*), cert. denied, 558 U.S. 882, 130 S. Ct. 200, 175 L. Ed. 2d 140 (2009). Accordingly, we turn to the merits of the defendant's claim. See, e.g., *State* v. *Fabricatore*, 281 Conn. 469, 477, 915 A.2d 872 (2007).

A defendant's double jeopardy claim presents a question of law, over which our review is plenary. See, e.g., *State* v. *Cody M.*, 337 Conn. 92, 99, 259 A.3d 576 (2020). "The fifth amendment to the United States constitution provides in relevant part: No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . . The double jeopardy clause of the fifth amendment is made applicable to the states through the due process clause of the fourteenth amendment." (Internal quotation marks omitted.) *State* v. *Ruiz-Pacheco*, 336 Conn. 219, 226, 244 A.3d 908 (2020). When a criminal defendant is convicted of multiple violations of the same statutory provision, the double jeopardy analysis requires that we determine whether "the legislature intended to punish the individual acts separately or to punish only the course of action which they constitute. . . . This analysis essentially asks what unit of prosecution the legislature intended as the punishable act under the statute. . . . The unit of prosecution analysis involves an effort to determine the legislature's intent as to whether and how a course of prohibited conduct can be separat[ed] into parts, each of which in itself constitutes a completed offense. . . . In [some] instances, the legislature intends to punish separately each discrete act that constitutes a com-

defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate [the] harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Outlaw*, 350 Conn. 251, 257, 324 A.3d 107 (2024).

State *v.* Williams

pleted offense.''[11] (Citations omitted; internal quotation marks omitted.) Id., 227–28. The issue, though constitutional, becomes one of statutory construction. E.g., *State* v. *Rawls*, 198 Conn. 111, 120, 502 A.2d 374 (1985). Accordingly, we review § 53a-217 in accordance with General Statutes § 1-2z and our familiar principles of statutory construction. See, e.g., *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 45–46, 213 A.3d 1110 (2019).

Given that § 53a-217 is a penal statute, we are mindful that ''[c]ourts must avoid imposing criminal liability [when] the legislature has not expressly so intended.'' (Emphasis omitted; internal quotation marks omitted.) *State* v. *Harrell*, 238 Conn. 828, 832, 681 A.2d 944 (1996). Penal laws are generally strictly construed against the state and ''are not to be read more broadly than their language plainly requires and ambiguities are ordinarily to be resolved in favor of the defendant.'' (Internal quotation marks omitted.) *State* v. *King*, 249 Conn. 645, 681, 735 A.2d 267 (1999). ''[T]he touchstone of [the] rule of lenity is statutory ambiguity. . . . Thus, as the United States Supreme Court has explained, courts do not apply the rule of lenity unless a reasonable doubt persists about the statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute.'' (Emphasis omitted; internal quotation marks omitted.) *American Promotional Events, Inc.* v. *Blumenthal*, 285 Conn. 192, 206, 937 A.2d 1184 (2008). ''Lenity thus serves only as an aid for resolving an ambiguity; it is not to be used

---

[11] The state contends that the defendant's double jeopardy claim also fails under the *Blockburger* test. See *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). The *Blockburger* test applies, however, ''[w]hen [a] defendant is charged with the violation of *two distinct statutes* in a single criminal proceeding arising from a single underlying set of events . . . .'' (Emphasis added.) *State* v. *Ruiz-Pacheco*, supra, 336 Conn. 226–27. Because the defendant was charged with two violations of the same statutory provision, § 53a-217 (a) (1), the *Blockburger* test is inapplicable.

State *v.* Williams

to beget one. The rule comes into operation at the end of the process of construing what [the legislature] has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers.'' (Internal quotation marks omitted.) *Albernaz* v. *United States*, 450 U.S. 333, 342, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981).

We begin with the text of the statute. Pursuant to § 53a-217 (a), ''[a] person is guilty of criminal possession of a firearm, ammunition or an electronic defense weapon when such person possesses a firearm, ammunition or an electronic defense weapon and (1) has been convicted of a felony committed prior to, on or after October 1, 2013 . . . .'' ''Firearm'' is statutorily defined as ''any sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or other weapon, whether loaded or unloaded from which a shot may be discharged . . . .'' General Statutes § 53a-3 (19). For the purposes of § 53a-217, the term ''ammunition'' is defined as ''a loaded cartridge, consisting of a primed case, propellant or projectile, designed for use in any firearm . . . .'' General Statutes (Rev. to 2017) § 53a-217 (a). The statutory definition of ''firearm'' implicitly includes ammunition when the firearm is loaded, as a ''firearm'' is a gun ''whether loaded or unloaded . . . .'' General Statutes § 53a-3 (19). It seems unlikely that the legislature would include ammunition in the definition of ''firearm'' yet still intend to treat the criminal possession of both a firearm and ammunition as two separate crimes. Construing the statute to mean that a person who is guilty of criminal possession of a firearm is also guilty of criminal possession of ammunition for the same incident would result, in every case in which a gun is loaded, and the other requirements of the statute are met, in that person being guilty of two crimes. After all, ammunition is necessary to fire a gun.

The state argues, however, that the legislature's use of the disjunctive ''or'' in connection with ''firearm'' and

State *v.* Williams

"ammunition" in § 53a-217 (a) "indicates the unambiguous meaning that possession of each item is a separate unit of prosecution that can be criminalized." It is true that "[s]tatutory terms or phrases separated by 'or' have separate and independent significance. The word 'or' normally is presumed to be used in the disjunctive sense in the absence of a clear legislative intent to the contrary." (Footnote omitted.) 82 C.J.S., Statutes § 425 (2025). Given the tension between the relevant definitions of "firearm" and "ammunition," and the presumptive meaning of "or," we conclude that the statute is ambiguous. Accordingly, we look to the statute's legislative history to determine whether the legislature intended to punish someone for criminally possessing a firearm as well as the ammunition found inside the firearm used during a single incident as two separate crimes. See General Statutes § 1-2z.

Prior to 2013, § 53a-217 criminalized the criminal possession of only "a firearm or electronic defense weapon . . . ." General Statutes (Rev. to 2013) § 53a-217 (a). In 2013, however, the legislature amended the statute to criminalize the possession of ammunition as part of a larger amendment pertaining to firearms, which was prompted by the 2012 mass shooting at Sandy Hook Elementary School in Newtown. See Public Acts 2013, No. 13-3, § 44 (titled "An Act Concerning Gun Violence Prevention and Children's Safety"). The legislative history makes clear that the legislature wanted to enact legislation that would prevent mass shootings and strengthen gun laws. See, e.g., 56 H.R. Proc., Pt. 3, 2013 Sess., p. 878, remarks of Representative Joe Aresimowicz. Significantly, Senator Martin M. Looney explained that "[o]ne of the great flaws in our law up until [that point was] that someone who was in illegal possession of a gun, because he was a convicted criminal or one of the other reasons for . . . legal disability under our statutes, was able to . . . go in and legally buy ammuni-

State *v.* Williams

tion for the gun which he was unable to possess legally. We are closing that loophole in our law with a provision in this, in this current bill. So we have the significant expansion of our, of our permitting and our . . . background checks, which is something that will put us, I think, in a much better position in terms of protecting public safety." 56 S. Proc., Pt. 2, 2013 Sess., p. 543. Although not specifically discussed, the addition of "ammunition" in § 53a-217 appears to be directed to a situation in which someone, who was not legally allowed to have ammunition, was found in possession of ammunition, such as on their person or in a car, but not in a loaded gun. See, e.g., 56 H.R. Proc., Pt. 4, 2013 Sess., pp. 1139–40, remarks of Representative Douglas McCrory ("what I'm clear on now is the fact that if an individual had an altercation, which could be designated as a third degree assault, and after the passage of this legislation, if that individual is found with a bullet maybe in his car, maybe in his possession, that person is being a felon and will require a [two year] jail sentence and a mandatory [two year] jail time").

Even if consideration of the legislative history does not lead to clarity as to the meaning of the statute, the rule of lenity applies, and the defendant can be convicted of only one crime under § 53a-217 when he possessed the firearm and ammunition in one place, at one time. See, e.g., *State* v. *Ruiz-Pacheco*, supra, 336 Conn. 236–37. "Unless a clear intention to fix separate penalties for each [criminal possession of a firearm and possession of ammunition] is expressed, the issue should be resolved in favor of lenity and against turning a single transaction into multiple offenses." *State* v. *Rawls*, supra, 198 Conn. 122. The defendant's conviction of both criminal possession of a firearm and criminal possession of ammunition, in the absence of a clearly discernable legislative intent for multiple convictions under § 53a-217 (a) (1), is barred by the double jeopardy clause. Cf. *United States* v. *Berry*, 977 F.2d 915,

352 Conn. 104 JUNE, 2025 137

State *v.* Williams

919 (5th Cir. 1992) ("The evil Congress sought to suppress by [the statute] was the arming of felons; the [statute] is based on the status of the offender and not the number of guns possessed. For the same reasons, we cannot conclude that Congress intended the simultaneous possession of ammunition to stand as a distinct unit of prosecution." (Footnote omitted.)); *People* v. *Lopez*, 119 Cal. App. 4th 132, 138, 13 Cal. Rptr. 3d 921 (2004) ("To allow multiple punishment for possessing ammunition in a firearm would . . . parse the [legislative] objectives too finely. [Although] there may be instances when multiple punishment is lawful for possession of a firearm and ammunition, the instant case is not one of them. [When], as here, all of the ammunition is loaded into the firearm, an indivisible course of conduct is present and [the statute] precludes multiple punishment." (Internal quotation marks omitted.)), cert. denied, 543 U.S. 1158, 125 S. Ct. 1312, 161 L. Ed. 2d 127 (2005); *State* v. *Nowels*, 941 N.W.2d 430, 439 (Minn. App. 2020) ("[t]he [trial] court erred by convicting and sentencing [the defendant] for unlawful possession of both a firearm and ammunition for possessing a single loaded gun"). Accordingly, the defendant's conviction of criminal possession of ammunition must be vacated.[12]

---

[12] Although not discussed by the parties, with respect to *Golding*'s fourth prong, we conclude that the error is not harmless. "Although we acknowledge that the [trial] court sentenced the defendant to serve a concurrent sentence for [both] offenses, we recognize that the conviction of both of the separate offenses, in their own right, impermissibly harms the defendant." (Internal quotation marks omitted.) *State* v. *Purvis*, 227 Conn. App. 188, 220, 321 A.3d 1158, cert. denied, 350 Conn. 922, 325 A.3d 1093 (2024); see also, e.g., *State* v. *Polanco*, 308 Conn. 242, 248–49, 255, 61 A.3d 1084 (2013) (when defendant's convictions violate double jeopardy, lesser included offense must be vacated); *State* v. *Carlos P.*, 171 Conn. App. 530, 536, 540, 157 A.3d 723 (agreeing with defendant's unpreserved claim that his conviction of sexual assault in first degree and attempted sexual assault in first degree violated double jeopardy and vacating defendant's conviction of attempt to commit sexual assault in first degree), cert. denied, 325 Conn. 912, 158 A.3d 321 (2017).

State *v.* Williams

The judgment is reversed as to the conviction of manslaughter in the first degree with a firearm and the case is remanded for a new trial on that charge, the judgment as to the conviction of criminal possession of ammunition is vacated, and the judgment is affirmed in all other respects.

In this opinion MULLINS, C. J., and ECKER, ALEXANDER and DANNEHY, Js., concurred.

D'AURIA, J., concurring in part and dissenting in part. I agree with part II of the majority opinion, which vacates the conviction of the defendant, Robert J. Williams, for criminal possession of ammunition in violation of General Statutes (Rev. to 2017) § 53a-217 (a) (1). I disagree with and respectfully dissent from part I of the majority opinion, however, which reverses the defendant's conviction of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a (a) and remands the case for a new trial on that charge. In my view, based on a proper construction of our self-defense and reckless manslaughter statutes, General Statutes §§ 53a-19 (a) and 53a-55 (a) (3), respectively, the trial court correctly declined to instruct the jury that the state had the burden of disproving, beyond a reasonable doubt, the defendant's justification of self-defense as to the first degree manslaughter charge. I would therefore affirm the trial court's judgment on that count.

I

Part I of the majority opinion addresses what it describes as a "novel" question of state law: "whether a self-defense instruction, when the evidence warrants, is available to a defendant charged with reckless manslaughter in the first degree with a firearm of an individual who is

352 Conn. 104 JUNE, 2025 139

State *v.* Williams

not the aggressor.''[1] Text accompanying footnote 5 of the majority opinion. The majority concludes that the instruction is available to the defendant in the present case. Given that Connecticut has operated under the Penal Code since 1969, what is equally novel—indeed, remarkable—in my view, is that the majority resolves this question principally by adopting a policy accepted by only a minority of courts in other states, rather than by examining our own criminal statutes. The majority's grudging statutory analysis begins and ends below the line, concluding that, although § 53a-19 (a) requires that "the defendant is using physical force against the assailant, it does not require that the resulting harm be

_____

[1] Throughout its opinion, the majority consistently uses the term "aggressor" to characterize the actor § 53a-19 (a) identifies as "[the] person . . . (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm." I will use the precise, but admittedly wordier, language found in § 53a-19 (a), rather than the term "aggressor" for several reasons. First, I believe that General Statutes § 1-2z calls on us to determine our state's legislative policy based on the language of our statutes, rather than on judicial characterizations of that language. Second, the word "aggressor" is expressly used elsewhere in our self-defense statute, but not in § 53a-19 (a). Specifically, § 53a-19 (b) provides that "a person is not justified in using deadly physical force upon another person if he or she knows that he or she can avoid the necessity of using such force with complete safety (1) by retreating . . . and was not the *initial aggressor* . . . ." (Emphasis added.) Third, our case law has developed the meaning of "initial aggressor" in § 53a-19 (b), providing all the more reason for us to stay within the explicit boundaries of the language of § 53a-19 (a). See, e.g., *State* v. *Whitford*, 260 Conn. 610, 623, 799 A.2d 1034 (2002); *State* v. *Jimenez*, 228 Conn. 335, 340–42, 636 A.2d 782 (1994). Finally, whether Kenny Martin or the defendant was, in fact, the "initial aggressor" was an issue for the jury to decide. Even if it were appropriate to use the word "aggressor" in interpreting § 53a-19, the state's argument was that the defendant was the initial aggressor, meaning that the jury already understood what that term meant in the context of the trial. Similarly, § 53a-19 does not refer to a "bystander" or "innocent bystander," or to a "third person" or "third party," except when specifically noted. See footnote 11 of this opinion. These are the majority's own descriptors, illustrating further that the majority is not undertaking a serious statutory analysis. In my view, therefore, referencing Terry Smith as an innocent bystander confuses the issue in this case. The state's charge of reckless manslaughter and the statutes implicated do not concern themselves with an "aggressor" or a "bystander." We should not either.

State *v.* Williams

inflicted on the assailant.'' The majority justifies the short shrift it affords our statutes by reasoning that ''the parties do not frame this issue as one of statutory interpretation.'' Left unacknowledged by the majority is that the trial court absolutely framed this issue as one of statutory interpretation in its oral decision. In particular, the trial court referred to Connecticut case law as cutting against requiring a jury instruction on the statutory justification of self-defense when the defendant is alleged to have recklessly caused the death of someone other than a person who is ''using or about to use deadly physical force'' or ''inflicting or about to inflict great bodily harm.'' General Statutes § 53a-19 (a); see *State* v. *Courchesne*, 296 Conn. 622, 671–73, 998 A.2d 1 (2010); *Morris* v. *Platt*, 32 Conn. 75, 77–78 (1864). Then, taking into account General Statutes § 53a-4, which provides that the Penal Code ''shall not be construed as precluding any court from recognizing other principles of criminal liability or other defenses not inconsistent with such provisions,'' the trial court went on to determine that, ''although Connecticut does not have a specific provision that addresses this issue, there is nothing inconsistent in Connecticut law with the provision I'm relying upon that there is an exception to self-defense for reckless criminal conduct.'' The court explained that its interpretation was both compatible with § 53a-19 (a) and warranted based on our statutes and case law: ''I would agree that self-defense might apply if the defendant were defending himself not only against the person shooting at him but against the third party. But there is no evidence in this case [that] the third party, Terry Smith, threatened the defendant in any way.'' Therefore, I cannot claim that the statutory construction I embark on in this concurring and dissenting opinion is entirely my own original thinking. Rather, my analysis tracks and lands in full agreement with that of the trial court.[2]

---

[2] The majority's assertion that it is proper to disregard our statutes because the parties have not briefed a statutory argument is supremely ironic. The

State *v.* Williams

The majority nevertheless maintains that the self-
defense policy that it enacts in this case represents a
logical extension of this court's decision in *State* v.
*Hall*, 213 Conn. 579, 585–86, 569 A.2d 534 (1990). But
whatever the logic of our decision in *Hall*, which, nota-
bly, derives almost entirely from a construction of our
statutes, the majority fails to contend convincingly with
the key factual difference between that case and the
present case: *Hall* did not involve the death of an indi-
vidual other than the person against whom the defen-
dant alleges he was using reasonable force (in the
majority's parlance, an innocent bystander). In my view,
we can—and should—resolve the question posed by
this fact pattern by examining our own statutes, just
as *Hall* did. By doing so, it becomes clear that, in this
state, as in a majority of jurisdictions, a defendant
charged with reckless manslaughter resulting in the
death of an individual other than a person who is "using
or about to use deadly physical force" or "inflicting or
about to inflict great bodily harm"; General Statutes
§ 53a-19 (a) (3); should not benefit from the statutory
justification of self-defense. See 2 W. LaFave, Substan-
tive Criminal Law (3d Ed. 2018) § 10.4 (g), pp. 217–18
n.97 (identifying as "[c]ontra" majority rule stated in
*Commonwealth* v. *Fowlin*, 551 Pa. 414, 710 A.2d 1130
(1998), which majority in present case principally relies

majority's rationale bears little resemblance to the way that the parties have
briefed the issue, which primarily addressed whether and how the doctrine
of transferred intent informs the defendant's justification of self-defense.
Moreover, even as the majority now frames it, the question of whether
an instruction that places the burden of disproving self-defense beyond a
reasonable doubt on the state is available to the defendant in this case
either is, or is not, a statutory question. If it is, as I believe, and the majority
does not believe that the parties' briefing is sufficient for it to decide the issue
as a matter of statutory construction, it should have ordered supplemental
briefing. See, e.g., *State* v. *Stephenson*, 337 Conn. 643, 652, 255 A.3d 865
(2020). Because the majority has decided the issue in the present case
without undertaking any serious statutory analysis, it is difficult to fathom
how this court will ever entertain—or have the opportunity to entertain—
the issue as a statutory matter in another case.

State *v.* Williams

on for support); see also A.L.I., Model Penal Code and Commentaries (1985) § 3.09 (3), p. 147 (Model Penal Code and Commentaries).

II

Before delving into my statutory analysis, it is worth defining the stakes of my disagreement with the majority because, though significant, they are not as complicated as the majority makes them out to be. Specifically, the majority concludes that the state bears the burden of disproving the justification of self-defense beyond a reasonable doubt, if the evidence warrants, even when a defendant is charged with recklessly, rather than intentionally, causing the death of someone other than the person he reasonably believes is "using or about to use deadly physical force" or "inflicting or about to inflict great bodily harm," in this case, Smith, who was not shooting at the defendant. General Statutes § 53a-19 (a). I conclude to the contrary that, as is the case in a majority of jurisdictions, our statutes do not require, under these circumstances, that the state carry that burden. *That's it.* Whether the state has this burden is the extent of what is at stake.

My conclusion that the state does not need to disprove self-defense beyond a reasonable doubt under these circumstances does not mean, however, that I believe that a defendant charged with reckless manslaughter cannot argue that he was not "evincing an extreme indifference to human life" or was not acting recklessly but was instead defending himself. Indeed, defense counsel argued precisely that,[3] and the trial

---

[3] Defense counsel argued in closing: "Did my client act recklessly? I submit to you that he acted reasonably in light of the circumstances. He was presented with the situation where a gun was pulled and a shot was fired. He returned fire. Nobody likes the fact that [Smith] got killed in this process, but that's on Kenny Martin. What [the defendant] did was reasonable. What he did was necessary. He chose to save his own life rather than get slaughtered in the street by . . . Martin."

State *v.* Williams

court then instructed the jury precisely so.[4] My conclusion also does not foreclose a defendant from requesting a particular instruction, to provide the jury with "as much information as possible" regarding self-defense to aid it in arriving at " 'a just verdict,' " as the majority states. The defendant in the present case could have asked for an additional instruction, if he thought it was necessary for the trial court to explain the concept of self-defense further in the context of a reckless manslaughter charge. As with any other request to charge, he could have claimed error on appeal if the trial court had declined to issue the instruction.[5] But that's not what the majority's disagreement with me concerns. Rather, it concerns *only* whether the state bears the burden of disproving beyond a reasonable doubt that the defendant acted reasonably in self-defense. Therefore, the majority's implication that my position deprives the jury of "a complete and thorough explanation of these concepts [of self-defense]" is pure distraction. Footnote 9 of the majority opinion. It is simply unclear to me what is so " 'esoteric' " about the state's not needing to disprove self-defense—which, I must repeat, is the only limitation under my rationale—and the majority has not expounded on any complexities inherent in the

[4] On the reckless manslaughter charge, the trial court instructed the jury to consider "whether [the defendant] had a valid claim to self-defense and whether he exercised self-defense reasonably or whether he exercised it recklessly," although it cautioned the jury that "the state does not need to disprove self-defense beyond a reasonable doubt to convict on this count [of reckless manslaughter]." This is consistent with the trial court's decision, in which it explained: "I do agree, however, that the defendant can argue that self-defense was one of the circumstances that the defendant confronted in determining whether the defendant acted with extreme indifference to human life under all of the circumstances. But I just am not going so far as to say that the state has to disprove self-defense for the manslaughter charge."

[5] The defendant in this case did not request any additional instruction. Therefore, under our current law, any hypothetical claim that the trial court should have provided him a more informative instruction on self-defense was waived under *State* v. *Kitchens*, 299 Conn. 447, 468–73, 10 A.3d 942 (2011).

State *v.* Williams

justification of self-defense that would suggest otherwise. Id.

III

In a few scattered footnotes, notably devoid of the familiar statutory analysis that this court routinely employs; see General Statutes § 1-2z; the majority concludes that our self-defense statute, § 53a-19 (a), covers the defendant's alleged circumstances in this case because, although a defendant must exercise self-defense against the person whom he reasonably believes is "using or about to use deadly physical force" or "inflicting or about to inflict great bodily harm," the majority contends that the statute does not consider on *whom* the defendant's reasonable force lands, only that the force that the defendant used was reasonable. To arrive at this conclusion, the majority considers secondary sources and decisions from other jurisdictions that assess the meaning of the justification of self-defense, notwithstanding that these sources neither comport with our statutory language nor represent the majority rule nationally, unlike the trial court's and my own analysis, which align with that of both a majority of jurisdictions and the Model Penal Code, after which our Penal Code is modeled. See, e.g., *State* v. *Courchesne*, supra, 296 Conn. 671 (courts consider Model Penal Code when statute's plain language does not resolve question of statutory interpretation because Penal Code drafters "heavily relied" on Model Penal Code). The majority also asserts that the rationale of *State* v. *Hall*, supra, 213 Conn. 586, mandates that the state must disprove the justification of self-defense beyond a reasonable doubt and must extend that justification to the defendant in the present case, who the state alleges to have "recklessly engage[d] in conduct [that] created a grave risk of death to another person, and thereby caused the death of another person by use of a firearm, that person being . . . Smith."

State *v.* Williams

Neither the majority's statutory analysis nor its interpretation of *Hall* is persuasive, in my view. Therefore, first, I detail what I believe to be a more reasonable construction and application of § 53a-19 (a) to the present case, employing principles of § 1-2z, which the majority neither references nor applies in part I of its opinion. I conclude that our state law does not require the prosecution to disprove that the defendant was justified in causing the death of a person who the defendant did not reasonably believe was "using or about to use deadly physical force" or "inflicting or about to inflict great bodily harm" and, in fact, that § 53a-19 (a) contemplates the involvement of only two individuals: the defendant and the person against whom he reasonably believed self-defense was necessary. Thus, the defendant in this case had no legal entitlement to a jury instruction on the statutory justification of self-defense[6] because he could not have reasonably believed that he needed to employ "deadly physical force" to defend himself against Smith, as opposed to Kenny Martin, when it was Martin who the defendant purported to have reasonably believed was "using or about to use deadly physical force" or "inflicting or about to inflict great bodily harm." General Statutes § 53a-19 (a). Second, I demonstrate that *Hall* is inapposite to the present case and perhaps best understood as requiring a jury instruction that the state need not disprove self-defense. In *Hall*, the defendant claimed self-defense against the person who he reasonably believed was "using or about to use deadly physical force" or "inflicting or about to

---

[6] It is the defendant who bears the burden of establishing a legal entitlement to raise any statutory defense. *State* v. *Small*, 242 Conn. 93, 104, 700 A.2d 617 (1997) ("a defendant who has produced evidence supporting a *legally recognized defense* is entitled, as a matter of law, to a theory of defense instruction" (emphasis added)); *State* v. *Rosado*, 178 Conn. 704, 708, 425 A.2d 108 (1979) ("only when evidence indicating the *availability* of [the] legally recognized defenses is placed before a jury is a defendant *entitled as a matter of law* to a theory of defense instruction" (emphasis altered)).

State *v.* Williams

inflict great bodily harm," which is unlike the defendant's killing of Smith while the defendant was purporting to act in self-defense against Martin. Cf. *State* v. *Hall*, supra, 213 Conn. 582.

A

My analysis of the defendant's claim that he was entitled to a jury instruction that burdens the state with having to disprove beyond a reasonable doubt that the defendant had acted reasonably in self-defense in response to Martin's use of force but, instead, killed Smith, begins as the majority's analysis does not, with the text of the particular justification statutes at stake in the present case, because, pursuant to § 1-2z, it is our own statutes in the first instance that embody the state's public policy. See *State* v. *Rupar*, 293 Conn. 489, 511, 978 A.2d 502 (2009). General Statutes § 53a-16[7] provides in relevant part that, "[i]n any prosecution for an offense, justification, *as defined in sections 53a-17 to 53a-23*, inclusive, shall be a defense. . . ." (Emphasis added.) It is not so simple, therefore, as the majority suggests, to say that a defendant may raise self-defense in " 'any prosecution . . . .' " (Emphasis omitted.) Footnote 7 of the majority opinion. Rather, it is only true that in "any prosecution," justification (including self-defense) "*as defined in*" our justification statutes, "shall be a defense." (Emphasis added.) General Statutes § 53a-16. The particular justification statute—self-defense—that the defendant[8] and the majority rely on

_____

[7] Although the legislature has amended § 53a-16 since the events at issue in this case; see Public Acts 2019, No. 19-27, § 2; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, I refer to the current revision of § 53a-16.

[8] Alternatively, the defendant relies on the common-law defense of necessity. Although the majority does not need to reach this issue, I believe that the trial court properly declined to charge the jury on this defense as well. This court has remarked that "the defense of necessity, or choice of evils, traditionally cover[s] the situation where physical forces beyond the actor's control rendered illegal conduct the lesser of two evils." (Internal quotation marks omitted.) *In re Juvenile Appeal (Docket No. 9268)*, 184 Conn. 157, 163, 439 A.2d 958 (1981). For example, in *State* v. *Varszegi*, 236 Conn. 266,

352 Conn. 104 JUNE, 2025 147

State *v.* Williams

is found in § 53a-19 (a), which provides in relevant part that "a person is justified in using reasonable physical force *upon another person* to defend himself or a third person from what he reasonably believes to be the use of imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; *except that deadly physical force* may not be used unless the actor reasonably believes that *such other person* is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm." (Emphasis added.)

The text of § 53a-19 (a) contains two clauses: one before the semicolon (justifying reasonable physical force), and the other after the semicolon (limiting the use of deadly physical force). If the victim in this case, Smith, had not been the victim of deadly physical force,

673 A.2d 90 (1996), this court noted that the defense of necessity in the context of prison escapes required some external, natural force: "In 1 Hale P.C. 611 (1736), it was written that if a prison caught fire and a prisoner departed to save his life, the necessity to save his life excuseth the felony." (Internal quotation marks omitted.) *State* v. *Varszegi*, supra, 282. Under this traditional framework, the facts of the present case do not present a natural physical force beyond the defendant's control.

The Appellate Court has adopted a three-pronged test to determine whether a defendant is entitled to a necessity defense instruction, requiring (1) that no legal alternative was available, (2) the harm to be prevented was imminent, and (3) that a direct causal relationship may be reasonably anticipated to exist between the defendant's action and the avoidance of harm. See *State* v. *Marsala*, 59 Conn. App. 135, 142, 755 A.2d 965, cert. denied, 254 Conn. 948, 762 A.2d 905 (2000). However, even within that framework, the defense of necessity still must "[deal] with obvious and generally recognized harms, not with those which are debatable and, indeed, the subject of legislation and government regulation." (Internal quotation marks omitted.) *State* v. *Morales*, 172 Conn. App. 329, 348, 160 A.3d 383, cert. denied, 327 Conn. 988, 175 A.3d 1244 (2017). In the present case, even under the Appellate Court's framework, the defendant's necessity claim fails because it was identical to his self-defense claim. The defendant cannot benefit from both necessity *and* self-defense under the same theory, considering that the defense of self-defense is codified into law and is therefore the "subject of legislation and government regulation." (Internal quotation marks omitted.) Id.

State *v.* Williams

the first clause, read in isolation, might be construed to justify the defendant's use of "physical force" on Smith at a time when the defendant was defending himself against the imminent use of *any* force being used against him, including force by a third person, to use the majority's parlance, such as Martin. But the defendant undoubtedly exercised deadly physical force against Smith, and the state alleges that he did so recklessly. Therefore, if the defendant is entitled to argue self-defense pursuant to § 53a-19 (a), complete with an instruction that places the burden on the state to disprove his defense,[9] he, and the majority, must pay particular heed to the statute's second clause, which concerns the use of "deadly physical force," as opposed to merely "physical force," which the statute's first clause controls. Once "deadly physical force" is implicated, the plain meaning of § 53a-19 (a) is that "a person" is justified in using deadly physical force "upon another person" only if he "reasonably believes that *such other person* is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm." (Emphasis added.) General Statutes § 53a-19 (a). In the context of the deadly physical force that the defendant used in this case, "a person" refers to the defendant, whereas "another person" and "such other person" both refer to Martin—meaning, therefore, that, at least when it comes to deadly force, § 53a-19 (a) refers to two individuals only,[10] the defendant and

---

[9] That the state has the burden to disprove a defense under § 53a-19 (a) is, it should be noted, a creature of statute. See General Statutes § 53a-12 (a) ("[w]hen a defense other than an affirmative defense, is raised at a trial, the state shall have the burden of disproving such defense beyond a reasonable doubt").

[10] This is in contrast to another justification statute not implicated in the present case that does consider more than two individuals based on its plain text. See General Statutes § 53a-22 (c) (1) ("a peace officer or an authorized official of the Department of Correction or the Board of Pardons and Paroles is justified in using deadly physical force upon another person for the purposes specified in subsection (b) of this section only when his or her actions are objectively reasonable under the given circumstances at

State *v.* Williams

the person against whom he reasonably believed self-defense was necessary.[11]

Where does that leave the defendant in the present case? Considering that the defendant has the burden of producing sufficient factual evidence at trial to establish his entitlement to the instruction; see, e.g., *State* v. *Revels*, 313 Conn. 762, 778, 99 A.3d 1130 (2014) (defendant is required to produce evidence at trial that warrants self-defense jury instruction), cert. denied, 574 U.S. 1177, 135 S. Ct. 1451, 191 L. Ed. 2d 404 (2015); and, applying the plain language of § 53a-19 (a), the defendant therefore had to produce evidence of one of two possible scenarios: (1) that he was justified in using deadly physical force against Martin because he reasonably believed that Martin was about to use deadly physical force or to inflict great bodily harm, or (2) that he was justified in using deadly physical force against

that time, and . . . (B) He or she . . . (ii) reasonably believes that the force employed creates no unreasonable risk of injury to a third party'').

Notably, at the time of Smith's homicide, General Statutes (Rev. to 2017) § 53a-22 (c) did not consider a third party in the manner it does now but, rather, provided that a designated and authorized official ''is justified in using deadly physical force upon another person for the purposes specified in subsection (b) of this section only when he or she reasonably believes such to be necessary to: (1) Defend himself or herself or a third person from the use or imminent use of deadly physical force; or (2) effect an arrest or prevent the escape from custody of a person whom he or she reasonably believes has committed or attempted to commit a felony which involved the infliction or threatened infliction of serious physical injury and if, where feasible, he or she has given warning of his or her intent to use deadly physical force.''

The fact that the legislature changed the language of § 53a-22 (c) to consider the impact of force on a third party with respect to liability bolsters my conclusion that the absence of such language in § 53a-19 (a) was a legislative choice to which this court must defer.

[11] The ''third person'' referred to in the first clause of the self-defense statute, § 53a-19 (a), is not a person *against* whom a defendant uses force, such as either Smith or Martin. Rather, the statute permits a defendant to use self-defense to defend not just himself, but to defend a third person from the use of force. The defendant does not argue that he was trying to *protect* Smith but, instead, caused Smith's death.

State *v.* Williams

Smith because he reasonably believed that Smith was about to use deadly physical force or to inflict great bodily harm. The facts of the present case do not fit within either scenario. Instead, the defendant sought to justify, pursuant to § 53a-19 (a), his use of deadly force against *Smith* because he claimed that he reasonably believed that *Martin* was about to use deadly physical force or to inflict great bodily harm on him. This is simply not a scenario that our justification statute contemplates. In fact, it is fair to say that it is the majority, not the state, that seeks to "carve out an exception to the applicability of the justification of self-defense when a bystander is accidentally killed rather than the initial aggressor" and to "adopt an exception when the legislature has not done so." Footnote 7 of the majority opinion.

The majority avoids squarely confronting my reading of the statute, or offering another option, instead hurriedly concluding that "§ 53a-19 does not expressly preclude the application of self-defense in the third-person context . . . . Although the statute requires that the defense be available only if the defendant is using physical force against the assailant, it does not require that the resulting harm be inflicted on the assailant." (Citation omitted.) Id. I disagree. I believe that, fairly read, the statute *does* preclude the application of self-defense "in the third-person context" and *does* require that the resulting harm that the defendant in this case seeks to justify be inflicted on Martin, the person who the defendant reasonably believed would exercise deadly physical force against him.[12] Section 53a-19 (a) expressly

[12] If I am correct that our self-defense statute contemplates the involvement of only two individuals—the defendant and the person against whom he exercises deadly force—it is fair then to ask how defendants, including the defendant in the present case, can properly benefit from a self-defense instruction when facing criminal charges such as murder or assault that result in the death or injury of individuals other than an aggressor. The doctrine of transferred intent squarely addresses this question. For those crimes that contemplate an innocent third person victim, such as in our

State *v.* Williams

justifies a defendant's use of deadly physical force "*upon* another person," but "another person" refers to the same person referenced later in that subsection as "such other person . . . ." (Emphasis added.) The only way that the defendant in the present case could be justified in using deadly physical force "upon another person" (i.e., Martin) is if that force landed "upon" "such other person" (also Martin). But because the defendant's use of deadly physical force caused the death of Smith, not Martin, the defendant's statutory self-defense claim could succeed only if § 53a-19 (a) contemplates the involvement of someone other than the defendant and the person who he reasonably believed would use "deadly physical force" or "inflict great bodily harm." As I have detailed, under the statute's plain language, that is not the case.

The majority also contends that our state's common law supports its conclusion that the statutory justification of self-defense can apply to a reckless manslaughter charge even when the defendant's use of deadly physical force causes the death of someone other than the person who the defendant reasonably believes is "using or about to use deadly physical force, or . . . inflicting or about to inflict great bodily harm." General Statutes § 53a-19 (a). But the principal Connecticut case

murder statute; see *State* v. *Hinton*, 227 Conn. 301, 309, 630 A.2d 593 (1993); and involve an intentional mental state, therefore aligning with the traditionally intentional aspect of self-defense; see *State* v. *Singleton*, supra, 292 Conn. 753 n.14; the innocent third individual to whom the defendant's intent transfers also takes the place of the aggressor within the meaning of the self-defense statute. See 1 W. LaFave, supra, § 6.4 (d), pp. 648–49 ("There are, of course, some situations where, though *A* intentionally kills or injures *B*, *A* is not guilty of murder or battery . . . [if] he is privileged to kill or injure *B* in self-defense . . . . Now suppose *A* shoots at *B* under these circumstances but, missing *B*, hits and kills or injures *C*, an innocent bystander. If *A* aims at his attacker *B* in proper self-defense, but hits *C* instead, he is not generally guilty of murder or battery of *C*. Once again, *he is only as guilty as to C as he would have been had his aim been accurate enough to have hit B.*" (Emphasis added; footnotes omitted.)).

State *v.* Williams

that the majority relies on does not, in fact, support its interpretation of § 53a-19 (a). To the contrary, *Morris* v. *Platt*, supra, 32 Conn. 75, which the trial court in the present case explicitly relied on in its decision, supports my interpretation of § 53a-19 (a). In particular, *Morris* states that a defendant may still be liable for a criminal act that harms someone other than the person against whom he reasonably believed self-defense was necessary if that act was done recklessly. See id., 83–87 ("[N]o man is liable in a civil suit or criminal prosecution for an injury lawfully committed in self-defense *upon an actual assailant. . . .* [I]f the act though strictly lawful and necessary was done with wantonness, negligence or folly, then, although the wounding was unintentional and accidental, it is conceded, and undoubtedly true; *that the defendant would be liable.*" (Citations omitted; emphasis added.)).

Although I base my conclusion largely on our state's statutes, it is no accident, in my view, that my interpretation is consistent with the rule in a majority of jurisdictions according to a leading commentator on substantive criminal law: "If *A* in proper self-defense aims at his adversary *B* but misses *B* and unintentionally strikes innocent bystander *C*, he is not liable for *C's* injury or death. *But the result is otherwise if under all the circumstances (including the need to defend himself) A was reckless with regard to C. In such a case he would be liable for battery if he merely injures, involuntary manslaughter if he kills, C.*" (Emphasis added; footnote omitted.) 2 W. LaFave, supra, § 10.4 (g), p. 217.[13] My conclusion is also consistent with the

---

[13] The majority claims that twenty-four jurisdictions recognize the principle of unintentional killing or injury to third parties during attempted self-defense, insinuating that nearly half the states in the nation are in accord with its position that a defendant charged with reckless manslaughter can benefit from a self-defense instruction after killing an individual other than the person against whom he reasonably believes self-defense was necessary. The source that the majority relies on does not support this proposition, however. See F. Tinio, Annot., "Unintentional Killing of or Injury to Third

State *v.* Williams

Model Penal Code, which, as I have noted, this state looked to when drafting our Penal Code. In relevant part, the Model Penal Code provides that, "[w]hen the actor is justified under [s]ections 3.03 to 3.08 in using force upon or toward the person of another but he recklessly or negligently injures or creates a risk of injury to innocent persons, the justification afforded by those [s]ections is unavailable in a prosecution for such recklessness of negligence towards innocent persons." Model Penal Code and Commentaries, supra, § 3.09 (3), p. 147. Our case law instructs that it is appropriate to look to the Model Penal Code if the language and legislative history of a criminal statute do not resolve a question of statutory interpretation. See, e.g., *State* v. *Courchesne*, supra, 296 Conn. 671.

The majority implies that my interpretation "advance[s] no public benefit." Footnote 6 of the majority opinion. But my disagreement with the majority stems from my belief that the legislature *has* considered precisely that it is logical and benefits society to punish reckless and negligent behavior. I believe that our statutes and case law support the policy rationale of the majority of courts in other states and the Model Penal Code when it comes to the application of self-defense as to criminal liability

Person During Attempted Self-Defense," 55 A.L.R.3d 620 (1974); see also F. Tinio, supra, 55 A.L.R.3d 131 (Supp. 2021). The majority's twenty-four jurisdiction figure comes from the section of the annotation detailing the general view that unintentional injury to, or the death of, a third person is excusable if it is the result of self-defense. See F. Tinio, supra, 55 A.L.R.3d, § 3 [a], pp. 623–24 (1974); see also F. Tinio, supra, 55 A.L.R.3d, § 3 [a], p. 132 (Supp. 2021). The cases discussed in this section include those outside the context of reckless manslaughter, such as *People* v. *Jackson*, 390 Mich. 621, 212 N.W.2d 918 (1973), which articulates the majority rule that, although "[t]he unintended killing of an innocent bystander is not murder if justifiably committed in proper self-defense . . . [*i*]*t may, however, be manslaughter*." (Emphasis added.) Id., 624. Another section of the annotation specifically details seven (not twenty-four) jurisdictions that specifically consider when, in a prosecution for manslaughter, a defendant is acting in lawful self-defense. See F. Tinio, supra, 55 A.L.R.3d, § 4 [b], pp. 631–34 (1974).

State *v.* Williams

for reckless manslaughter resulting in the death of someone such as Smith. The majority is apparently unconvinced because of what it refers to as the "incongruity that would result in recognizing transferred intent to kill when it comes to intentional murder . . . while not . . . provid[ing] the defendant with the benefit of a complete self-defense instruction for reckless manslaughter." (Citation omitted.) Id. As I have previously explained, however, the majority's reference to "a complete self-defense instruction" comes down to one issue and one issue only: whether the state has to disprove self-defense.

In my view, therefore, the trial court correctly declined to afford the defendant in the present case a jury instruction on the statutory justification of self-defense pursuant to § 53a-19 (a) considering that our state has, by statute and case law, adopted the policy of a majority of state courts and aptly described by the trial court in the present case: "[S]uch blanket authority for the use of self-defense defies logic . . . [and] is not tolerable in an organized society, and we can't write it off as just collateral damage." That policy does not include requiring that the state disprove the statutory justification of self-defense when a defendant employs deadly physical force against someone such as Smith, who the defendant could not reasonably have believed was "using or about to use deadly physical force, or . . . inflicting or about to inflict great bodily harm." General Statutes § 53a-19 (a).

B

I also take issue with the majority's determination that its conclusion is a natural extension of *State* v. *Hall*, supra, 213 Conn. 584. The majority states that, "[h]aving concluded in *Hall* that a trial court must instruct the jury on self-defense for a reckless manslaughter charge when the evidence warrants such an

State *v.* Williams

instruction, [it follows] . . . that the defense is available regardless of whether the victim is a bystander or the alleged aggressor.'' Our holding in *Hall*, however, even as the majority understands it in the present case, does not conflict with my interpretation of § 53a-19 (a) because the defendant in *Hall* had claimed self-defense against the person whom he reasonably believed self-defense was necessary. See *State* v. *Hall*, supra, 582. This differs from the defendant's killing of Smith while purportedly acting in self-defense against Martin, a circumstance that I believe § 53a-19 (a) precludes.

Nevertheless, I disagree with the majority's understanding of *Hall* to the degree that it relies on ''the subjective-objective distinction'' between self-defense and recklessness in placing the burden on the state to disprove a defendant's claim of self-defense (which, as I have made clear in part II of this opinion, is all that is at stake in this case), considering that both self-defense and recklessness involve subjective and objective inquiries. See *State* v. *Hall*, supra, 213 Conn. 584–86 (self-defense statute, § 53a-19, is compatible with recklessness mental state in statute defining manslaughter in second degree because self-defense involves subjective inquiry, whereas recklessness involves objective inquiry). Given our case law on self-defense, I would posit that *Hall* is better understood as requiring the trial court to instruct the jury on a defendant's claim of self-defense for recklessness crimes, perhaps based on the language of § 53a-19 (a), but without requiring that the state disprove that claim pursuant to General Statutes § 53a-12 (a). See General Statutes § 53a-12 (a) (''[w]hen a defense other than an affirmative defense, is raised at a trial, the state shall have the burden of disproving such defense beyond a reasonable doubt''). With this understanding of *Hall*, the jury instruction it requires is more akin to the common-law defense of negation.

State *v.* Williams

The majority itself appears to be uncomfortable with the "subjective-objective rationale from *Hall*," given its acknowledgment that it "appears to be in tension with our recent decision in *State* v. *Johnson*, 351 Conn. 53, 328 A.3d 143 (2025)," in which this court expressly detailed that self-defense involves both subjective and objective prongs. See id., 61. This tension is not new. This court has long made clear that self-defense and recklessness involve both subjective and objective inquiries. See, e.g., *State* v. *Salz*, 226 Conn. 20, 33, 627 A.2d 862 (1993) (to constitute recklessness, defendant must objectively disregard risk that constituted gross deviation from reasonable standard of care and must have "subjectively realized and chose to ignore [that] substantial risk" (internal quotation marks omitted)); *State* v. *DeJesus*, 194 Conn. 376, 389 n.13, 481 A.2d 1277 (1984) ("The Connecticut test for the degree of force in self-defense is a subjective-objective one. The jury must view the situation from the perspective of the defendant. Section 53a-19 (a) requires, however, that the defendant's belief ultimately must be found to be reasonable."). In fact, we recognized in *Hall* itself that self-defense involves both a subjective and objective inquiry, citing the same language from *DeJesus* that the majority references in its opinion and that this opinion references in this very paragraph. See *State* v. *Hall*, supra, 213 Conn. 586 n.7.

I would add that *Hall* expressly states that "[i]t is *this* [*subjective-objective*] *distinction* that allows self-defense to be an applicable defense to [reckless manslaughter]." (Emphasis added.) Id., 586. Therefore, I find it increasingly difficult to decipher what the basis is for *Hall* to require the state to disprove self-defense, given the majority's insistence that, "[e]ven if we give less weight to the first [subjective-objective] ground in *Hall*, we are still persuaded that there is an inherent difficulty for a jury, comprised of lay people, 'in

weighing the justifiability of risk and action inherent in the crime of [reckless] manslaughter . . . and the concept of self-defense . . . .' '' This supposed ''inherent difficulty'' does not convince me that *Hall* requires that, under the circumstances of the present case, in which the defendant was permitted to and indeed did argue principles of self-defense and the trial court instructed the jury on those principles, the state must disprove the defendant's claim of self-defense beyond a reasonable doubt pursuant to §§ 53a-12 (a) and 53a-19 (a). I am particularly unconvinced because, as I have explained; see part II of this opinion; nothing prevented the defendant in this case from requesting an additional instruction to provide the jury with all the '' 'esoteric' '' information concerning principles of self-defense that it might have needed to make an informed decision.

To be clear, I am not suggesting that we should overrule *Hall* in this case. No one has asked us to do so, and such action is unnecessary for my construction of § 53a-19 (a) to prevail. But, in my opinion, scrutinizing the law of our state reveals that *Hall* is better understood as requiring, when the evidence warrants, a self-defense instruction for crimes involving recklessness that the state need not disprove self-defense pursuant to § 53a-12 (a). The certified question in *Hall* asked whether ''the Appellate Court err[ed] in concluding that the trial court should not have instructed the jury that self-defense was not available as a defense to the lesser included offense of manslaughter in the second degree . . . .'' *State* v. *Hall*, supra, 213 Conn. 581 n.3. This question does not consider whether such an instruction would include mandating that the state disprove that defense, and, in fact, *Hall* never references § 53a-12 (a) or mentions the state's burden to disprove self-defense at all. Rather, the court in *Hall* disagreed with the argument that, ''if the state proves the elements of manslaughter in the second degree beyond a reasonable

State *v.* Williams

doubt, it will necessarily have negated the defense of self-defense.'' Id., 584. But it does not necessarily follow from that disagreement that the defendant must be afforded a self-defense jury instruction that requires the state to disprove that defense beyond a reasonable doubt. And, although the court in *Hall* referred to § 53a-19 (a) to inform its conclusion, that conclusion was that ''the defendant was entitled to a jury instruction on self-defense''; id., 586; not that the defendant was entitled to a jury instruction on self-defense that included allocating the burden of disproving self-defense to the state pursuant to § 53a-12 (a). Therefore, *Hall*, in my view, is best understood as merely requiring *an instruction* that provides the jury with the information it needs to make an informed decision.

With this understanding of *Hall*, our case law supports interpreting the instruction required by that decision on the common-law *negation* defense of accident, rather than the statutory *justification* of self-defense. Negation is apt in this circumstance because the statutory justification of self-defense involves ''the element of intent normally associated with a justification defense,'' which is simply incompatible with a crime committed recklessly, considering that such crimes are, by their nature, unintentional. See *State* v. *Singleton*, 292 Conn. 734, 753 n.14, 974 A.2d 679 (2009). Under the circumstances of this case, therefore, because the defendant was charged with and found guilty by a jury of a crime involving a reckless, rather than an intentional, mental state,[14] he could not act intentionally in self-defense.

---

[14] See General Statutes § 53a-3 (13) (''[a] person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation''); cf. General Statutes § 53a-3 (11) (''[a] person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct'').

State *v.* Williams

Instead, he could claim only that his actions were "unintentional or accidental," therefore *negating* a mental state of recklessness. Id.; see also *State* v. *Cassino*, 188 Conn. 237, 242, 449 A.2d 154 (1982) ("[w]hile proof of accident would negate an essential element of the crime charged . . . it does not constitute a justification for a crime and is distinguishable from self-defense").

The majority agrees that the defendant in the present case could not have had an intentional mental state, considering its admission that "there is no intent to transfer" because he was convicted of reckless manslaughter. Footnote 5 of the majority opinion. The majority nevertheless concludes that the defendant is entitled to a statutory justification defense based on *Hall*'s "subjective-objective" distinction, which it argues "applies with equal force to the present case," even as, in the same breath, it distances itself from that distinction. In large part, the majority bases this policy conclusion on *Commonwealth* v. *Fowlin*, supra, 551 Pa. 414. But, in that case, under Pennsylvania law, self-defense *negated* the recklessness elements of the crimes with which the defendant was charged, rather than *justified* his reckless actions, therefore aligning with my interpretation of *Hall*. See id., 419 ("[b]ecause the crimes with which [the defendant] was charged require proof of recklessness, and because [Pennsylvania law] holds that a claim of self-defense, if believed, negates any element of recklessness, [the defendant], a fortiori, cannot be found to have been reckless, for the [state] admits that his actions were justified"). Although the majority tries not to wholly abandon the "subjective-objective distinction" this court drew in *Hall*, it might as well have done so because, by giving that distinction "less weight," all that is left of the rationale for *Hall* is the justification that, in " 'esoteric' " matters such as self-defense, "the jury should have as much information as possible." But no one denies that the jury should have

State *v.* Williams

sufficient instruction, and, as I have said, those words ring hollow in this context. The defendant can ask the court to provide all the explanation he wants to try to demystify what the majority considers such an " 'esoteric' " concept.

Whatever legal gymnastics this court must undertake to understand the underpinnings of *Hall*, it does not excuse, in my view, the majority's failure to return to our own statutes to determine how to resolve the "novel" question that this case presents: whether the state must disprove that a defendant, charged with a crime committed recklessly, acted reasonably in self-defense against someone who was not the "person . . . using or about to use deadly physical force, or . . . inflicting or about to inflict great bodily harm." General Statutes § 53a-19 (a). Neither the majority's explanation of *Hall*, nor my answer to this question, as described in part I of this opinion, changes that it is a *statutory question*. Section 53a-19 (a) and *Hall*, properly understood, align with the trial court's refusal to put the burden on the state to disprove the defendant's self-defense claim. The trial court appropriately instructed the jury, based on the law of our state, that it may consider principles of self-defense in determining whether the defendant acted recklessly in violation of § 53a-55 (a) (3). Because I believe that the majority's conclusion inappropriately places the law and policy of other jurisdictions before that of our state and the majority continues to misinterpret how *Hall* should be best understood, I respectfully dissent.